**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LATONIA MANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 4:18-CV-01046 NCC |
| V. ) | |
| ) | |
| MISSOURI HOME THERAPY, LLC ) | |
| MISSOURI IN HOME SERVICES, LLC ) | |
| ) | |
| Defendant. | |

**DEFENDANTS' REPLY BRIEF**

COMES NOW, Defendants Missouri Home Therapy, LLC and Missouri In Home Services, LLC, and provides herewith its reply to Plaintiffs Response To Defendants Motion To Dismiss. In support of the same, Defendants state as follows:

**The Use of Illegal Drugs Is A Serious Matter Proscribed By Defendants Policy.**

Plaintiff filed an unverified complaint in federal court alleging disability discrimination. The disability discrimination alleged by Plaintiff stems from her prior drug use and/or or the believe Defendants perceived her as being disabled because she was allegedly enrolled in a rehabilitation program at the time of her termination. Defendants suggest that Plaintiff was allegedly enrolled in a rehabilitation program not to mock her anyway. It is simply a customary way of referring to an unproven statement and is not and should not be interpreted as a derogatory reference to Ms. Mann, as perhaps it is being interpreted. To be clear, drug use has serious social/ economic ramifications as evidenced by recent media reports of near epidemic abuse of opioids.  This epidemic adversely impacts the user as well as family members and others, that are dependent upon them. Defendants do not take drug use and/or abuse lightly, as

1

evidenced by Defendants' drug abuse policy. It is the very reason why Defendants suggested that Plaintiff submit to a drug test.

**Plaintiff Failed To Exhaust Her Administrative Remedies As To Her Employer**.

Plaintiff acknowledges that she was the personal care attendant for both Latonia Mann and Kenneth Green. She also acknowledges that Kenneth Green and Brenda Mann were both responsible for supervising Plaintiff they were also responsible for verifying Plaintiff's wages and submitting timesheets. The applicable statute contemplates this type of arrangement and unequivocally states that "the attendant is an employee of the consumer only…but is never the employee of the vendor…" 19 CSR 15-8.400 . Title VII requires Plaintiff to exhaust her administrative remedies before bringing suit in court alleging unlawful discrimination, pursuant to 42 U.S.C.§ 2000e-5(e)(1).  *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994).* It is clear that Plaintiff failed to exhaust her administrative remedies as to her employer, Kenneth Green and Brenda Mann as evident by her complaint, and subsequent amendment thereto, as well as a review of the charge of discrimination. Dismissal is appropriate for this reason alone, as Plaintiff cannot advance a claim of employment discrimination without first exhausting her administrative remedies. Her claim fails as a matter of law for other reasons as well.

**Plaintiff Cannot Maintain A Claim Of Disability Discrimination Based On The Assertions Contained In Plaintiff's Complaint**

Plaintiff urges the court to reject Defendants motion to dismiss because she has a legitimate claim under the ADA. Fortunately, the determination as to whether or not Plaintiff has a legitimate claim under the ADA is not based on subjective beliefs. It is more than "mere conclusory statements of a Plaintiff who feels that [she] has been discriminated against."Loeb v.

TWA, Inc., No. 4:97CV01494, 1998 U.S. Dist. LEXIS 22999, at *16 (E.D. Mo. Oct. 1, 1998) Plaintiff must plead and satisfy the necessary elements of an ADA claim, as set forth in more detail in Defendant's motion to dismiss.

**Plaintiff Was Terminated For Legitimate, Nondiscriminatory Reasons**.

The drug test revealed Plaintiff used illegal drugs. Plaintiff does not challenge the validity of the drug test. Her complaint is void of any statement, or suggestion, that will call into question the accuracy of the test. The complaint merely suggests that it's possible Plaintiff could have tested positive for illegal drugs.  More specifically, she says in her first amended complaint "Tests for illegal use of drugs sometime reveal the presence of lawfully-used drugs". This is significant for a number of different reasons including but not limited to the fact that it is a tacit acknowledgment that the employer terminated Plaintiff for testing positive for illegal drugs. It also serves to confirm the validity of the drug test. The inquiry as to whether or not Plaintiff terminated Plaintiff in violation of the ADA must end at this stage, as Plaintiff was terminated based on a belief that she was using illegal drugs.

Plaintiff was exhibiting behavior that prompted a drug test. The drug test unequivocally revealed that Plaintiff was using illegal drugs. While Plaintiff may wish to contest whether or not the use of prescription drugs causes a false positive, her employer and the entity responsible for administering the CDS program were faced with the question simply whether or not it would allow someone who tested positive for illegal drugs, to continue to provide assistance to disabled individuals who are in desperate need of care. Relying on the results of the drug test, the decision was made to remove Plaintiff from the CDS program for obvious safety concerns. The decision was not predicated on or influence by Plaintiff's alleged disability and/or her alleged participation in a rehabilitation program.

**The Decision To Terminate Her Employment Was Based On A Positive Drug Test.**

Plaintiff may not like the decision made by Defendant in this case. It's difficult to imagine anyone in her shoes to except such a decision. However, it is not necessary for her employer to demonstrate that the decision was wise or even fair. That is something that is outside the scope of judicial review. The employer's only requirement is to show that it was an honest decision. Loeb v. TWA, Inc., No. 4:97CV01494, 1998 U.S. Dist. LEXIS 22999, at *13 (E.D. Mo. Oct. 1, 1998) ("whether the employer gave an honest explanation of its behavior," not whether the reason was a wise or fair one.)

**Plaintiff Does Not Allege That She Was In A Rehabilitation Program Until After The Decision Was Made To Terminate Her Employment.**

Plaintiff suggests in her amended complaint that she is the victim of disability discrimination due, in part two being enrolled in a rehabilitation program. However, Plaintiff admits that she did not inform her employer of this until after the drug test was administered and only after the decision was made to terminate her employment. Suggesting that Plaintiff was terminated because she was in a rehabilitation program is self-serving at best. At the expense of being repetitive the die had already been cast by the time Plaintiff allegedly said anything about being enrolled in a rehabilitation program. There is nothing discuss with Plaintiff on the day of her termination, other than the fact that she tested positive for drugs. It stands to reason that someone who was in fact enrolled in a rehabilitation program would be wise to inform their employer at the time that they are asked to submit to a drug test. This is especially true if, as Plaintiff suggests that she was taking prescription medication that sometimes shows up as illegal drugs in a drug test. It defies logic and reason that she would not share this information at the

4

time she's requested to submit to a drug test and prior to submitting to the test. Waiting until the results of the drug tests to disclose this information seems self-serving and nefarious.

**Plaintiff Does Not Inform Her Employer That She Is Using Prescription Drugs To Overcome And Drug Addiction Prior To Her Termination.**

Plaintiff exhibited erratic behavior while caring for disabled individuals. Her erratic behavior is what precipitated the drug test. The test as we know, return positive results - she tested positive for the use of illegal drugs. It is difficult to understand how anyone could justify allowing such a person to continue to care for disabled individuals.  It is difficult to understand how Plaintiff believes she could continuously provide care to disabled individuals, while she is under the influence of prescription drugs that has an adverse impact on her behavior. It is even more difficult to understand how and why Plaintiff failed to inform her employer or the administrator of the CDS program, that she was taking prescription drugs, irrespective of whether the policy mandates it or not. Again, the caregiver must be able to provide assistance to physically disabled individuals. Plaintiff is required to demonstrate how she could do this, while taking medications that causes her to exhibit erratic behavior. Stated differently, it is the Plaintiff's burden to prove that she can perform the essential functions of the job with, or without an accommodation. *See Burchett v. Target Corp.,* 340 F.3d 510, 516 (8th Cir. 2003) She simply failed to do so here.

**Plaintiff's Argument That Defendants Are "Joint Employers" Is Unavailing.**

Plaintiff suggests that Defendants are "joint employers". As such, the court should allow this claim to proceed.  This argument is flawed for a number of different reasons. The statute that governs the relationship between the vendor, Missouri In-Home Services, LLC and the consumer, both Latonia Mann and Kenneth Green.  The statute does not contemplate a "joint

5

employer" type relationship between the vendor and the consumer. It unequivocally identifies the consumer as the employer. Two mischaracterize this relationship and/or to shift the burden to the vendor, would turn the CDS program upside down. It would have a chilling effect on each vendor that otherwise would be inclined to provide services beneficial to disabled individuals. It would take away any incentive to serve in such capacity, in light of the remuneration provided by the State and the likelihood of being called into court and being forced to defend claims of discrimination. Simply put, the economic benefit derived from serving as a vendor in the CDS program would be significantly outweighed by the potential liability associated with it. Accordingly, construing Defendants as "joint employers" is not only inconsistent with the statute, but it would a precursor to the demise of the CDS program.

**Conducting Additional Discovery Will Not And Does Cure The Problems With Plaintiff's Complaint And Amendments Thereto.**

Plaintiff suggests that the court should construe Defendants motion to dismiss, as a motion for summary judgment. He invites the court to allow the parties to conduct discovery before entering judgment on its motion. Unfortunately, no degree of discovery is going to change the relevant facts of this case. Plaintiff tested positive for the use of illegal drugs. The vendor relied on the drug tests and in so doing, terminated Plaintiff for violating the drug policy. The vendor did not know Plaintiff was allegedly enrolled in a rehabilitation program, until after the drug test and after the decision was made to terminate Plaintiff's employment. Plaintiff did not inform the vendor that she was using prescription drugs, any time prior to the drug test. She waited until the day of her termination, after the decision was made to terminate her employment, to inform the employer that she was taking prescription drugs. The applicable statute, governing the relationship between the vendor and the consumer, unequivocally identifies the consumer as the employer. There is no amount of discovery that is going to change

these facts.  Accordingly, conducting further discovery would be a waste of judicial resources, as well as those of the named Defendants in this case. For these reasons and the ones set forth in Plaintiff's motion to dismiss, the court must grant Defendants motion to dismiss.

/s/ Christopher B. Bent, # 45875
Law Office of Christopher Bent, LLC
2200 West Port Plaza Drive
Suite # 306
St. Louis, MO 63146
Phone: (314) 439-0287
Fax:    (314) 558-2622

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of September 2018, the foregoing was electronically submitted by way of the Courts ECF System to:

Matthew J. Ghio, Esq.
3115 S. Grand Blvd. Suite 100
St. Louis, Missouri 63101


By: /s/ Christopher Bent